[Cite as *Mark's Pro Servs., L.L.C. v. Pearlman*, 2026-Ohio-2765.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| MARK'S PRO SERVICES, L.L.C., | **CASE NO. 2025-G-0041** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the<br>Chardon Municipal Court |
| ALAN PEARLMAN, et al., | |
| Defendants-Appellants. | Trial Court No. 2024 CVF 00575 |

## OPINION AND JUDGMENT ENTRY

Decided: July 20, 2026
Judgment: Affirmed

*Colleen Del Balso* and *Todd E. Petersen*, Petersen & Petersen, 10680 Mayfield Road, Chardon, OH 44024 (For Plaintiff-Appellee).

*Michael Drain*, 147 Bell Street, Suite 202, Chagrin Falls, OH 44022 (For Defendants-Appellants).

EUGENE A. LUCCI, J.

{¶1}   Appellants, Alan Pearlman, et al., appeal the judgment of the Chardon Municipal Court granting judgment in favor of appellee, Mark's Pro Services, L.L.C., on its breach of contract claim. We affirm the judgment of the trial court.

{¶2}   Appellee is a professional landscaping business. Appellant Alan Pearlman resides at a residence owned by a family trust at 32575, Trailwood Court, Solon, Ohio. Mr. Pearlman has an ownership interest in different properties subject to this dispute: He is a member of Pedra Properties, LLC ("Pedra") (also an appellant) and Continental Enterprises, Ltd. ("Continental") (also an appellant).

{¶3}    In March 2024, appellants sought quotes from appellee at three separate properties. Appellee provided written quotes for the three properties as follows: $8,650 for landscaping and maintenance work at Pedra's location (Quote 438) and $9,450 for landscaping and maintenance work at Continental's location (Quote 434). Further, in April 2024, appellee quoted $3,000 for landscaping work at Mr. Pearlman's residence (Quote 454). Mr. Pearlman added an additional service request for his residence for which appellee quoted $400.

{¶4}    Mr. Pearlman agreed to the quotes and signed each with appellee. Mr. Pearlman signed Quote 438 as "Alan Pearlman, Pres." Mr. Pearlman signed Quote 434 as "Alan Pearlman, Pres." He then signed Quote 454 as "Alan Pearlman." Mr. Pearlman testified he was authorized to enter contracts for Pedra and Continental.

{¶5}    Appellee performed the work outlined in the quotes from April through May 2024 and sent Mr. Pearlman invoices. Appellee sent one invoice in the amount of $3,240 (Invoice 583); Mr. Pearlman refused to pay the full amount and the balance on that invoice remained in the amount of $3,202.50. Appellee sent Mr. Pearlman a separate invoice in the amount of $4,644 (Invoice 544). Again, Mr. Pearlman declined to pay the full amount and a balance of $4,590.25 remained. Finally, appellee sent Mr. Pearlman an invoice for landscaping work on his home in the amount of $3,672 (Invoice 605). Mr. Pearlman paid nothing on that invoice. In total, appellee maintained it was owed $11,464.75 for the services rendered and left unpaid.

{¶6}    Mr. Pearlman admitted he deducted specific payment amounts to appellee because of his claimed dissatisfaction with the work. Mr. Pearlman, however, also conceded he did not ask appellee to return and address his alleged concerns.

Case No. 2025-G-0041

{¶7}  Mark Kovalick, the principal of appellee, testified to his company's estimation of work and billing processes. He noted Mr. Pearlman was satisfied with his company's work. Mr. Kovalick also noted Mr. Pearlman was specifically satisfied with the company's work at the Pedra and Continental properties. Mr. Kovalick also stated that Mr. Pearlman was "very happy [with the work at his residence] and then directed me to his son and his other two commercial properties to quote."

{¶8}  On June 26, 2024, appellee filed a complaint in Chardon Municipal Court for breach of contract and unjust enrichment against Mr. Pearlman. An amended complaint was later filed to include Continental and Pedra as defendants. The matter was tried before a magistrate. Prior to hearing evidence, appellee moved for default judgment against Continental and Pedra because neither filed an answer to the amended complaint. The magistrate accordingly recommended that default judgment be granted in appellee's favor against the entities. The magistrate received testimony and evidence from both Mr. Pearlman and Mr. Kovalick and recommended judgment in appellee's favor.

{¶9}  Objections were filed to the magistrate's decision, and, on October 6, 2025, the trial court accepted and adopted the magistrate's substantive recommendation and entered judgment in appellee's favor in the amount of $11,464.75 and interest at the statutory rate of 8% per annum. Mr. Pearlman now appeals and assigns five errors. We shall address the alleged errors out of sequence.

{¶10}  For his second assignment of error, Mr. Pearlman asserts:

{¶11}  "The trial court committed prejudicial error in granting judgment against the manifest weight of the evidence."

Case No. 2025-G-0041

{¶12} In considering whether a civil judgment tried to the bench is against the manifest weight of the evidence, an appellate court applies the same standard as is used in reviewing a criminal judgment. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17.

{¶13} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶14} "[A] court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct . . . . The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶15} Under his second assignment of error, Mr. Pearlman argues "[t]he magistrate ignored overwhelming evidence that [appellee] failed to perform its contracts in a workmanlike manner." He maintains testimony indicated he did not "get what he bargained for. . . ." Instead of a "grassy lawn," "he got a bunch of bare spots." He

Case No. 2025-G-0041

additionally asserts that an expert was not necessary to establish the work was not performed properly. We disagree.

{¶16} While Mr. Pearlman testified to his dissatisfaction with appellee's work, Mr. Kovalick testified that, at the time the services were rendered, Mr. Pearlman was happy and even referred appellee to, among others, his son for landscaping work. The magistrate determined that appellants "failed to prove that any of Plaintiff's work fell below professional landscaping standards." The magistrate observed that Mr. Kovalick is "unquestionably qualified and educated as a professional landscaper and his testimony that [the company] did all work to standard *is unrebutted.*" (Emphasis added.) The magistrate emphasized that Mr. Pearlman is not a landscaper and offered no witnesses who were qualified to take issue with the appellee's work. And, importantly, Mr. Pearlman did not request appellee to return to the site(s); instead, he and his employees watered the areas where new grass had been seeded. Mr. Pearlman, however, did not provide evidence "of the persons involved in the watering" or whether they "had any experience in growing new grass, what method or device was used for watering, and whether steps were taken not to overwater."

{¶17} The magistrate observed:

> Grass, in Ohio or anywhere else, can take more than one effort to achieve complete coverage. [Mr. Pearlman] had no qualified witness to suggest [appellee's] initial results were below standard. [Mr. Pearlman] attempted to argue that [appellee] should have done soil testing. [Mr. Pearlman] is not qualified to state whether soil testing is a standard or required practice for landscapers who are planting grass. [Appellee] flatly stated soil testing is not considered standard practice and is not done routinely.

{¶18}   We conclude that appellee presented credible evidence of the contracts into which it entered with appellants. Appellee, via Mr. Kovalick's testimony, also presented credible evidence that the work it performed was consistent with the standards and customs of professional landscapers. Simply because Mr. Pearlman testified that he was dissatisfied with the grass coverage does not provide "overwhelming evidence" that appellants breached the terms of the contracts at issue. We therefore conclude the trial court did not err in adopting the magistrate's recommendation finding appellants liable for breach of the contracts at issue.

{¶19}   Appellants' second assignment of error lacks merit.

{¶20}   Appellants' third assignment of error states:

{¶21}   "The trial court committed prejudicial error in failing to permit Defendant Pearlman, a contracting party signing a contract in a representative capacity, to introduce evidence of the same."

{¶22}   Under this assigned error, appellants claim, in conclusory fashion, that the magistrate erred in failing to permit Mr. Pearlman from introducing extrinsic evidence demonstrating he signed two of the contracts (the Pedra and Continental properties) in a "representative" capacity. We do not agree.

{¶23}   Appellants simply claim that the magistrate erred in failing to permit Mr. Pearlman to introduce extrinsic evidence "to demonstrate the parties' intentions where two of the three agreements between the parties were signed in a representative capacity and one was signed in an individual capacity." Appellants also indirectly assert the contract at issue was ambiguous. Again, no argument is offered in support of this

conclusion. Appellants, however, fail to cite where they (or Mr. Pearlman) attempted to introduce such evidence or assert ambiguity in the underlying contracts.

{¶24} App.R. 16(A)(7) provides: "The appellant shall include in its brief . . . [a]n argument containing the contentions . . . with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "An appellant 'bears the burden of affirmatively demonstrating error on appeal.'" *Tally v. Patrick*, 2009-Ohio-1831, ¶ 22 (11th Dist.), quoting *S. Russell v. Upchurch*, 2003-Ohio-2099, ¶ 10 (11th Dist.). Furthermore, if an argument is available to support an appealing party's assignment of error, "'it is not this court's duty to root it out.'" *Upchurch* at ¶ 10, quoting *Harris v. Nome*, 2002-Ohio-6994, ¶ 15 (9th Dist.). We may accordingly disregard an assigned error that fails to comply with the basic tenets of App.R. 16(A)(7).

{¶25} Despite this fundamental flaw, Mr. Pearlman testified he was authorized to enter into contracts for Pedra and Continental. And it is apparent from the magistrate's decision that the court considered certain extrinsic facts. The magistrate observed:

> [Mr.] Pearlman agreed to the quotes and signed each quote with [appellee]. [Mr. Pearlman] signed quote 438 as "Alan Pearlman, Pres." [Mr.] Pearlman signed quote 434 as "Alan Pearlman, Pres." [Mr.] Pearlman signed quote 454 as "Alan Pearlman."

> [Appellants] claim that at the time the quotes were signed, Alan Pearlman was president of "AGP Realty Company Inc." [Appellants] argue that the quotes were signed such that AGP Realty Company Inc is the real party in interest and Appellants have pursed the wrong entities. . . . [N]o [appellant] plead[ed] an affirmative defense of failure to name necessary and indispensable parties to this action. . . . [And] [Mr.] Pearlman never corrected [appellee] on how the invoices were to be directed. [Mr.] Pearlman met with [appellee via its owner, Mr. Kovalick] in person and never specified any specific capacity

he was contracting with [appellee] other than as Alan Pearlman

{¶26} "'Apparent authority' has been defined as "'. . . the power to affect the legal relations of another person by transactions with third persons . . . arising from . . . the other's manifestations to such third person.'" *Master Consolidated Corp. v. BancOhio Natl. Bank,* 61 Ohio St.3d 570, 574 (1991), quoting 1 Restatement of the Law 2d, Agency, § 8, at 2 (1958). The Supreme Court of Ohio, in *Miller v. Wick Blg. Co.*, 154 Ohio St. 93 (1950), paragraph two of the syllabus, held that:

> Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.

*See also Cascioli v. Central Mut. Ins. Co.*, 4 Ohio St.3d 179, 181 (1983)

{¶27} Even assuming Mr. Pearlman did not have actual authority, he acted with apparent authority to enter the contracts for the work performed by appellee. Mr. Pearlman conceded he had authority to act on behalf of Pedra and Continental. He also signed the contracts as "Pres." or "President" on behalf of the companies who owned the properties associated with Pedra and Continental. The trial court considered the so-called extrinsic evidence of Mr. Pearlman's status as the president of AGP Realty Company, Inc. and determined the evidence was still sufficient to support appellee's claim.

{¶28} Further, even if Mr. Pearlman was a representative of AGP Realty Company, Inc., he held himself out as an individual with similar authority to bind Pedra and Continental to the contracts under consideration.

Case No. 2025-G-0041

{¶29} Finally, appellants' assert that the contract was somehow ambiguous. This was not raised in Mr. Pearlman's answer (and neither Pedra nor Continental filed an answer). Further, the issue was not explored by consent of the parties at trial, pursuant to Civ.R. 15(B), which provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Accordingly, we need not further consider the tangential question of contractual ambiguity.

{¶30} Appellants' third assignment of error lacks merit.

{¶31} Appellants' fourth assigned error provides:

{¶32} "The magistrate failed to take into account and give Defendant's [sic] credit for payments on account to Plaintiff."

{¶33} Under this assignment of error, appellants claim that the magistrate failed to consider and credit payments made on appellee's account. Appellants assert they were not given credit for two payments of $706.25. We disagree.

{¶34} The magistrate determined:

> Based upon the evidence, . . . [appellants] owe [appellee] $3,202.50 for landscaping work [appellee] performed at 3208 Warrensville Center Road. [Appellants] owe [appellee] $4,590.25 for landscaping work performed at 3341 Warrensville Center Road. Finally, [appellants] owe [appellee] $3,672.00 for landscaping work [appellee] performed at 32575 Trailwood Court, for a total of $11,464.75.

{¶35} The payments referenced by appellants relate to installment payments provided for *maintenance* to the properties, not landscaping. Pursuant to the appellee's complaint, damages were sought in relation to the delinquent landscaping bills. Mr. Pearlman confirmed this point on cross-examination. When appellee's counsel asked Mr.

Case No. 2025-G-0041

Pearlman to read a provision of the invoice from Invoice 438 which provided for installment payments regarding maintenance, the following exchange occurred:

> [Mr. Pearlman]: ["]Payments for our full service maintenance can be billed in eight monthly installments. Installments are billed from April 1st through November 1st. Your installment amount would be $706.25. *This does not include the landscaping work described above*.["]
>
> [Appellee's counsel]: Okay, and with regard to this quote, which is pertaining to 3208 Warrensville Center Road; is that correct?
>
> [Mr. Pearlman]: Yes
>
> [Appellee's counsel]: Did you make the installment payment, monthly installment plan?
>
> [Mr. Pearlman]: Yes, for April and May of 2024.
>
> [Appellee's counsel]: And by signing this agreement you also accepted the fact that the installment plan *did not include a[ny] landscape work*, correct?
>
> [Mr. Pearlman]: Yes, that's what the last paragraph stated.

(Emphasis added.)

{¶36} The testimony demonstrates that Mr. Pearlman was aware that the two $706.25 installment payments related to maintenance and not landscaping. Even if appellants had pleaded "set-off" as an affirmative defense, *see Franciscan Communities, Inc. v. Rice*, 2024-Ohio-4796, ¶ 10 (8th Dist.), which they did not, the argument asserted under this assignment of error would lack merit.

{¶37} Appellant's fourth assignment of error is not well taken.

{¶38} Appellants' fifth assignment of error alleges:

{¶39} "The trial court committed prejudicial error in awarding attorney's [sic] fees as collection costs without the introduction of any evidence to support the award."

{¶40} Under this assigned error, appellants claim that the magistrate erred in awarding attorney fees as collection fees pursuant to the parties' agreement. They maintain attorney fees cannot be recovered absent proof of the attorney's services. We do not agree.

{¶41} The following provision appears in the parties' contract:

> Collection Fees. If any collection service, legal action[,] or other proceeding is necessary to collect past due amounts, customer agrees to be responsible for all fees associated with the collection of the delinquent amount, including but not limited to: service fees, warrant fees, filing fees[,] and reasonable collection/legal fees in the amount of 25%. . . .

{¶42} Pursuant to this provision, the magistrate determined:

> Based upon the contractual agreement between the parties, the Magistrate recommends [appellants] owe [appellee] a 25% flat charge on the sum of $11,464.75 for collection fees or costs associated with recovering monies that [appellants] owe [appellee].The Magistrate disagrees with [appellants] objection that this is essentially a "loser-pays" clause. The clause is a term in the contractual agreement between the parties. The clause does not specify a right to "attorney's fees" but rather a right to collection fees. . . . The Magistrate recommends that judgment in [appellee's] favor should include an additional 25% of the $11,464.75 unpaid balance, or $2,866.19. . . .

{¶43} Even though appellee did not submit or establish attorney fees before the magistrate, the magistrate did not award attorney fees. To the contrary, the magistrate awarded "collection fees" pursuant to the plain language of the contract to which the parties' voluntarily entered.

{¶44} Appellants' fifth assignment of error lacks merit.

{¶45} Appellants' first assignment of error asserts:

Case No. 2025-G-0041

{¶46} "The trial court committed prejudicial error in granting an oral motion for default judgment, in contravention of Civ.R. 55(A)."

{¶47} Under their first assigned error, appellants claim that the trial court erred in granting default judgment against Pedra and Continental.

{¶48} Civ.R. 55(A) provides, in relevant part:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor; . . . If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application.

{¶49} Appellee did not provide written notice of the application for judgment at least seven days prior to the oral motion. The record, however, demonstrates that Mr. Pearlman was a "member" of both Pedra and Continental. During the hearing, counsel for appellee moved for default judgment against the relevant defendants. The magistrate pointed out that no answer was filed on behalf of the two corporate defendants under consideration. The magistrate stated that he would recommend granting the default judgment because "Mr. Pearlman individually filed an answer on his own behalf . . ." Defense counsel clarified that even though "there are three named defendants in the case[,] [t]he court is going to recommend default judgment with respect to two of those defendant entities[?]" The magistrate confirmed defense counsel's statement and no additional issue was taken with the ruling or recommendation at that time.

{¶50} The concept that a corporation is a legal "person," separate and apart from the individual persons who compose it, is a legal fiction designed to facilitate the

Case No. 2025-G-0041

transacting of business. *State ex rel. Atty. Gen.,* v. *Standard Oil Co.,* 49 Ohio St. 137 (1892), paragraph one of the syllabus. Where, however, the corporate form is used to subvert the intent and policy of this fiction, the fiction should be disregarded and the corporation considered a collection of individuals. Id. at 177-178. Mr. Pearlman was an undisputed agent of Pedra and Continental. Nevertheless, this did not relieve Pedra and Continental of their obligations to file an answer to appellee's amended complaint.

{¶51} Mr. Pearlman testified that he was authorized to enter into contracts for Pedra and Continental. He was therefore an agent for the companies that were subject to the amended complaint. By virtue of Mr. Pearlman's answer, appearance, and defense of the suit, the companies at issue were implicated in and were also subject to the underlying suit. In this respect, one can reasonably conclude that, despite the failure of those companies to file an answer to the amended complaint, they arguably "appeared" for purposes of Civ.R. 55(A). Nevertheless, we accept appellee's argument that any error by the court in entering default judgment out-of-rule was harmless as a matter of law.

{¶52} The magistrate recommended that appellants were liable for the landscaping fees at issue. Under appellants' second assignment of error, we concluded this judgment was supported by credible evidence. We therefore hold that, even had the trial court denied the oral motion for default judgment, the outcome of the proceedings would have been the same.

{¶53} Appellants' first assignment of error lacks merit.

{¶54} The judgment of the Chardon Municipal Court is affirmed.

JOHN J. EKLUND, J.,
SCOTT LYNCH, J.,
concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellants' assignments of error are without merit. It is the judgment and order of this court that the judgment of the Chardon Municipal Court is affirmed.

Costs to be taxed against appellants.

_____
JUDGE EUGENE A. LUCCI

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-G-0041